UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO CAMPA LOPEZ,<br><br>  Plaintiff,<br><br>  v.<br><br>R. RICE, et al.,<br><br>  Defendants. | Case No. 13-cv-03330-JD<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 47, 48, 59, 61 |

Roberto Lopez is a state prisoner proceeding pro se in this civil rights action under 42 U.S.C. § 1983. Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs by failing to promptly and properly treat him for asthma attacks on March 23 and March 25, 2012. Defendants Polly, Pennington, Sackett and Olson have moved for summary judgment. Plaintiff filed an opposition and a cross-motion for summary judgment. Defendants filed a reply. Defendants' motion for summary judgment is granted and plaintiff's motion is denied.

## BACKGROUND

The facts for this motion are largely undisputed. Plaintiff was a prisoner at Pelican Bay State Prison ("PBSP") during the relevant time. Opposition (Docket No. 57) at 1. Defendants Olson, Sackett and Pennington are correctional officers and were working at PBSP. Motion for Summary Judgment, Olson Decl. ¶¶ 1, 4; Sackett Decl. ¶¶ 1, 5; Pennington Decl. ¶¶ 1, 3. Defendant Polly was a registered nurse at PBSP at the relevant time. MSJ, Polly Decl. ¶¶ 1, 4. Plaintiff concedes that the defendants in this case were not involved in providing his medical care for an asthma attack that occurred on March 23, 2012. MSJ, Bower Decl., Ex. A at 12-13.

Plaintiff's claims for that incident are therefore deemed withdrawn.

On March 25, 2012, Olson, Sackett and Pennington were working in plaintiff's housing unit on the second watch shift which began at 6:00 am. MSJ, Sackett Decl. ¶ 6. Olson was working as the control tower officer and Pennington and Sackett were working as floor officers. MSJ, Olson Decl. ¶ 4; Sackett Decl. ¶ 6. Polly was working as the roving nurse for the entire prison and was responsible for providing first responder treatment. MSJ, Polly Decl. ¶ 3.

Pelican Bay State Prison is a Level IV maximum security facility which uses Security Housing Units. MSJ, Sackett Decl. ¶ 3. The Security Housing Unit is designed for inmates who require separation from general population inmates. *Id*. The prison is divided into four main housing facilities. *Id*. ¶ 4. Each facility has its own separate medical clinic. *Id*. Regular inmate medical appointments occur on weekdays, and much of the medical staff takes the weekend off. *Id*. ¶ 5. On the weekend, plaintiff's medical facility typically has one licensed vocation nurse and the entire prison will have a roving registered nurse. *Id*. The incident in this case occurred on a Sunday. *Id*. ¶ 7.

Shortly after 6:00 a.m. on March 25, 2012, Olson heard an inmate state that he was having a medical issue and needed to see the nurse when he arrived to the area. MSJ, Olson Decl. ¶¶ 4, 5; Opposition at 3. Olson believed that inmate was plaintiff. MSJ, Olson Decl. ¶ 5. Plaintiff states that another inmate informed Olson "[plaintiff] was having an asthma attack and needed to see medical staff." Opposition at 3. Because the facility nurse was scheduled to arrive shortly to deliver medication, Olson responded that he would alert the nurse when he arrived. MSJ, Olson Decl. ¶ 5. At approximately 6:20 a.m. to 6:25 a.m. another inmate shouted that plaintiff was in distress and having trouble breathing. *Id*.; Opposition at 3. Olson responded that he would notify the nurse immediately, and Olson called the corridor control officer to report the incident. MSJ, Olson Decl. ¶¶ 5, 6. In his position as control tower officer, Olson was not permitted to leave his post unless another relief officer was present. *Id*. ¶ 5.

There was only one licensed vocational nurse assigned to the facility at that time. Sackett Decl. ¶ 7. The nurse was not in the facility medical clinic. *Id*. Typically at that time he is distributing medications to the diabetic inmates to take with their morning meals. *Id*. At some

2

time between 6:40 a.m. and 6:45 a.m., the rover nurse arrived at the clinic, was notified that an inmate needed medical attention, and Pennington and Sackett transported plaintiff by wheelchair to the clinic. Sackett Decl. ¶ 7; Olson Decl. ¶¶ 6, 7; Bower Decl., Ex. A at 35; Opposition at 3. They secured plaintiff in handcuffs prior to transporting him. MSJ, Olson Decl. ¶ 6.

At approximately 6:40 a.m. Polly was notified that plaintiff was experiencing medical problems. MSJ, Polly Decl. ¶ 4. Polly began to treat plaintiff at 6:45 a.m. MSJ, Polly Decl. ¶ 4; Bower Decl., Ex. A at 35. Plaintiff told Polly that he began having medical problems at 6:30 a.m. *Id*. Polly noted that plaintiff was short of breath and was wheezing. MSJ, Polly Decl. ¶ 5. Polly took plaintiff's vitals and performed a respiratory assessment. *Id*. Plaintiff contends that Polly intentionally delayed and disregarded plaintiff's condition by asking "irrelevant questions unrelated to plaintiff's current medical condition." Opposition at 3. Polly took plaintiff's vitals at 6:46 a.m., 6:55 a.m., and 7:10 a.m. Bower Decl., Ex. A at 35. Polly determined that plaintiff's medical condition required further immediate consultation and notified the on-call doctor at 6:55 a.m. *Id*. The doctor instructed Polly to call an ambulance and Polly complied. MSJ, Polly Decl. ¶ 6. The ambulance arrived at approximately 7:10 a.m. and plaintiff was taken by gurney to the ambulance at 7:18 a.m. and then transported to the hospital. *Id*.

## DISCUSSION

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id*.

A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial

3

burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id*. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id*. at 324.

For purposes of summary judgment, the Court views the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court will assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *Id.* at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059-60.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but did

4

not actually know, the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). In addition "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference. . . . . [Prisoner] would have . . . no claim for deliberate medical indifference unless the denial was harmful." *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Plaintiff argues that defendants were deliberately indifferent to his serious medical needs due to the delays in responding and treating his asthma attacks. He argues that the delays caused further injury to his respiratory system.

The undisputed evidence does not support plaintiff's claims. Olson was first informed of the medical problem at about 6:20 a.m. Plaintiff offers an affidavit from inmate Harrison, the inmate who originally informed Olson that plaintiff needed medical attention. Docket No. 58 at 14. Harrison states this first occurred at 6:20 a.m. and then 6:25 a.m. *Id*. at 14-15. Several other inmate affidavits included in plaintiff's opposition also state that the serious nature of the medical problem was not reported to Olson until 6:20 a.m. *Id*. at 18-32. In plaintiff's various inmate appeals filed shortly after the incident, he states that the asthma attack occurred at 6:20 a.m. *Id*. at 44, 48, 50. It is undisputed that plaintiff told Nurse Polly that he began having breathing problems at 6:30 a.m.

It is undisputed that when Olson was first informed of the medical problem, he responded that plaintiff could see the nurse when he arrived. When Olson was informed 15 to 20 minutes later that plaintiff's situation was serious, it is undisputed that he immediately reported the incident to other correctional officers who immediately notified medical staff.

These facts show that Olson was not deliberately indifferent to plaintiff's serious medical needs. He acted promptly and reasonably in response to plaintiff's condition. Plaintiff has failed to meet his burden in his opposition or cross-motion for summary judgment to show a genuine issue for trial.

It is equally undisputed that defendants Pennington and Sackett did not violate plaintiff's

5

Eighth Amendment rights. They obtained a wheelchair and transported plaintiff to the medical clinic at some time between 6:40 a.m. and 6:45 a.m. Even assuming it took approximately fifteen minutes to obtain a wheelchair for plaintiff and to transport him to the clinic, these defendants are still entitled to summary judgment. Pennington and Sackett responded to the medical emergency, obtained a wheelchair and transported plaintiff from a maximum Security Housing Unit cell in short order. They had to wait a brief period of time because the nurse assigned to the facility was delivering medication to other inmates and the roving nurse needed to be called, but that is of no constitutional moment. Plaintiff has not met his burden in showing that the defendants were deliberately indifferent to his serious medical needs and that this short delay violated the Eighth Amendment. Plaintiff's brief and conclusory allegations are insufficient to counter defendants' motion for summary judgment or obtain summary judgment on his motion.

It is also undisputed that defendant Polly is entitled to summary judgment on plaintiff's claim. He received the report about plaintiff at 6:40 a.m. and began treating him at 6:45 a.m. He took his vitals and performed a medical assessment. Based on plaintiff's condition he contacted a doctor at 6:55 a.m., and the doctor advised that an ambulance should be called. He continued to monitor plaintiff's vitals until the ambulance arrived at 7:10 a.m., and plaintiff was transported by gurney to the ambulance at 7:18 a.m. Plaintiff complains that Polly asked him medical questions that were not related to his asthma, but the medical report reflects that Polly asked appropriate questions about plaintiff's medical history, drug allergies, symptoms, and current medications. MSJ, Bower Decl., Ex. A at 35. Plaintiff also alleges that Polly delayed contacting the doctor. But, it is undisputed that Polly contacted the doctor 10 minutes after plaintiff arrived, during which time Polly was asking him medical questions, examining him, and taking his vitals. Even assuming that Polly did delay calling the doctor by a few minutes, it does not demonstrate deliberate indifference. Polly is entitled to summary judgment.

Viewing the evidence in the light most favorable to plaintiff, the defendants promptly responded to plaintiff's asthma attack in alerting medical staff, transporting him to the facility medical clinic, evaluating him, and taking him to the outside hospital. There is no genuine dispute as to any material fact, and the undisputed facts demonstrate that defendants were not deliberately

6

indifferent to his serious medical needs.

## CONCLUSION

1. The parties' motions for extensions (Docket Nos. 47, 59, 61) are **GRANTED** and all filings are deemed timely filed and have been reviewed by the Court.

2. Defendants' motion for summary judgment (Docket No. 48) is **GRANTED**. Plaintiff's cross-motion for summary judgment (Docket No. 57) is **DENIED**.

3. The Clerk shall terminate all pending motions, enter judgment, and close the file

**IT IS SO ORDERED.**

Dated: June 6, 2016

JAMES DONATO
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERTO CAMPA LOPEZ,

    Plaintiff,

  v.

R. RICE, et al.,

    Defendants.

Case No. 13-cv-03330-JD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 6, 2016, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Roberto Campa Lopez
CSP-Sacramento C7-214L
C22294
P.O. Box 29066
Represa, CA 95671

Dated: June 6, 2016

Susan Y. Soong
Clerk, United States District Court

By: *Lisa R. Clark*
LISA R. CLARK, Deputy Clerk to the
Honorable JAMES DONATO